We'll call the first case Dr. Karen Malleus v. Dr. John George, Jill Hackman, and Jeffrey Conrad. Ms. Lopez. Good morning, Your Honors. I hope I can live up to the expectation and provide the education needed. Congratulations. May it please the Court, I represent Dr. Karen Malleus, who is present in the courtroom today. And with leave of court, I request three minutes of rebuttal. This Court entered in order- That request will be granted. Thank you, Your Honor. This Court entered in order sealing portions of the record referenced as Appendix 3, and I will be generally referencing those portions in accordance with Local Appellate Rule 106. Your Honors, the District Court in this matter ruled that Dr. Karen Malleus' complaint did not adequately allege privacy interests that were protected under the 14th Amendment. His rationale was that they did not fall into the three categories stated in his opinion, medical information, HIV information, or sexual orientation information. This is not the rule in this circuit, nor is the rule of the land. The rule is- Let me ask you, why should we take what the District Court said as having been an exclusive list as opposed to an exemplary list? The language in the District Court opinion does appear that he was ruling that this was a per se categorization of information. Furthermore, that that would only be subjected to the protections of the 14th Amendment. Furthermore, the analysis that was provided didn't seem to indicate anything related to a reasonable expectation of privacy, which is the rule of the land. Well, can I ask you, what's the, what precisely is it that your client believes was protected in her communication? Was it the assertion that she had a question about her grandniece's honesty? What was the thing that, in your client's view, was of such a personal and private nature as to warrant constitutional protection? Your Honor, without going into the sealed portions of the record, it is the very nature of that information you just referenced. The statements about her grandniece that were made in the context of this child abuse report that were personal, the communications and perceptions that she had, characterizations of her grandniece that she made during a child abuse reporting incident in 2006 with Dr. Iovino, and then, of course, subsequently in March of 2008 during the child abuse audit that occurred at the behest of the school district administrator, Defendant George, and also the school district board. Well, can you contrast that with the kinds of information that have been found to be personal and private in other circumstances? I mean, if we took Judge Sanchez's list as an exemplary list, you would certainly agree that those are, the things he listed are personal and private, right? Well, they are in terms of whether the context does protect that kind of information. Medical information has been deemed to be protected, but it's the context of the information where it's protected. Well, is there anything that's embarrassing if it gets out, constitutionally protected? I mean, if I said something unkind about Judge Fischer, which I never would, but if I did and that came out, I would certainly be embarrassed about that. I wouldn't want it to come out, but does that mean that that communication is a constitutionally protected one? Your Honor, it would depend on the context in which you made such a statement. If you made that statement here in this open courtroom, of course it would not be protected under the 14th Amendment because there would be no reasonable expectation of privacy. But had you made that conversation to me in your chambers one-on-one and telling me that this is confidential and you'd rather have me keep it to myself and I was a state actor, then my future disclosure of that information very well could have been a violation of 14th Amendment. It is the context that matters. How is it constitutionally protected when this is an observation about a person's character or personality? We all do that all the time. We all size up people. We express our opinions about people. We all have our opinions about each other and about others, and others have opinions of us. How could that opinion testimony as to our personality or our character strengths or weaknesses be constitutionally protected? Once again, Your Honor, it is the context of the disclosure. What difference does the context make if it's done in the terms of a report that's being drawn and observations over coffee between two people? Well, if it were observations over coffee between two people as opposed to a confidential setting, then it would make a difference, Your Honor. The nature of the characteristics that are personally held are what is protected. What makes this report confidential? In other words, this is a public body that's drawing a report. This is not a lawyer-client relationship. This is a public body, and the public has the right to know what's going on in those matters which this body is overseeing, don't they? Your Honor, I completely agree that the public has a right to hold public officials accountable for their acts or their failures to act, but that's not what happened in this case. In this case, there were two separate documents. One was the KCAG report. We understand. We understand. Wasn't she duty-bound to be truthful when giving information concerning the things which she alleged to be constitutionally protected? Wasn't she duty-bound as not only a member of the Board but as a citizen to truthfully give her opinion as to the facts concerning what the investigation was about? I don't accept the premise that as a private citizen, she has an individual public policy duty to reveal information, but I would say that she personally did feel like she wanted to participate in that confidential audit. That audit did provide the school district with important information about what went wrong in the 2006 investigation. And just like other kinds of child abuse audits or child fatality review audits or death review audits, those audits have to be open to all kinds of information. You have to be able to disclose the information freely so that you can correct the errors of the past. It's confidential and it's not going to be open to the public. Open to in terms of disclosing the information. Open to the public is a separate thing altogether. Now, does she just – I guess one of the problems I have with this case and your argument is that this whole disclosure started with Ms. Malleus volunteering this information about her grandniece. Nobody asked her for this information. She volunteered it. She volunteered it to the people that she initially communicated it to in 2006. This was a child abuse report, Your Honor. She received the information as she was walking into a meeting with the school superintendent, school superintendent being the highest authority in the school district and responsible for child abuse investigations. But the child abuse investigation involved another student. It didn't involve her grandniece. As the court may be aware, the child abuse reporting statute says you're to report suspected child abuse. She received information from her grandniece that made her believe this is suspected child abuse. There's something going on between a teacher and a student. I'm going to report this to the highest official without hesitation. That's not the issue that's in question here. That is correct. It's not the reporting of that suspected child abuse. What's in question here is her opinion about her grandniece's propensity to maybe exaggerate. That's what's in dispute. And that was part and parcel of the child abuse report. It was part of the report that she made to the school superintendent. Okay. Now, what case do you cite to us which is the most analogous to your case that would extend this right to privacy beyond where it has been, which I've seen, beyond where it's been extended in the past either by this circuit or by the Supreme Court? I'll start with Nixon, Your Honor. Nixon clearly provided protection for President Nixon's private communications with his friends, colleagues, and family members, and that was protected by the United States Supreme Court as informational privacy protection under the 14th Amendment. These were presidential communications. I mean, I don't mean for a minute to denigrate the public service rendered by your client, which was clearly long and laudatory to the school board, but is there not a distinction to be drawn between the private papers of a United States president and a school board member's comment to the school superintendent? Actually, Your Honor. In terms of, you know, maybe the constitutional protections and the issues that might be at stake? The issue that was protected in the Nixon case were his personal reflections and communications, and actually the argument goes the other way. You have a highest official in the land who has, you know, constitutionally protected privacy interests, perhaps even more diminished than Dr. Malleus's was because of his position. Well, you have all kinds of executive privilege overtones when you're talking about the president, right? I mean, Dr. Malleus, for all her accomplishments, I don't think would claim the rights to executive privilege, would she? Of course not, Your Honor. Okay. So then doesn't that kind of make Nixon a case apart from what we're talking about here? I think what Nixon stands for, Your Honor, is that the rights to privacy extended beyond medical information because when Whelan came out, Whelan said, you know, this medical information has personal information, and Nixon came out and said, well, it's beyond medical. It's about these personal interactions, reflections, characterizations, documents, and communications between colleagues and family members that's going to be protected in the Nixon case. And in Slayton, responding now to Judge Fisher's question regarding what case do I have that would be the closest, in Slayton, the Tenth Circuit did find that the diary entries by a wife that were submitted voluntarily by her husband to the police department for the purpose of instituting an investigation regarding her murder still they contained private information about him even though they were penned by her. And it was information about the character and nature of their relationship, their relationship with husband and wife, what they did in their relationship. And the court said, that's protected. He has a privacy interest in that. It's very similar. If your client had been subpoenaed to give a deposition during discovery because of her knowledge of a nurse, her niece, or whatever, or her position with the board, and had been asked what she could tell about her niece's personality, characteristics, and so forth, is it your position that she could have claimed a privilege in that deposition? Absolutely, Your Honor. That's very similar to – What type of privilege would that be? She would have been able to assert that her right to privacy under the 14th Amendment extends to her oppressions and characterizations of her grandniece, and that if the state was going to compel her disclosure of this information, just like in Westinghouse where a subpoena was issued, that she was going to resist that and provide for protection, maybe providing for redactation. Well, the attorneys are seeking to see how strong a witness, as you do with witnesses at any proceeding, how strong or weak, and say, could you tell us something about the background of your niece, or her ability to observe things and to recount accurately what she observed. Your position is that she could not answer that. She would not have to. She could claim that she has a First Amendment privilege not to reveal her thoughts concerning what her character is of her niece. Your Honor, I think the question would really become, how would we protect the information? And just like in Pansy, we might enter into some sort of a confidentiality agreement that limited the exposure of that information. Say the government does not want to enter into any agreement. They want the information without an agreement because they want to use the information. I would most likely file a motion to quash limiting, providing for protection of that information, just like I filed a motion to seal. She would have a liberty interest in that information, even though it's crucial to the investigation as to witnesses who will be summoned to testify against the teacher. Your Honor, in that situation, the court would have to engage in a balancing of interest, scrutinizing this particular privacy interest, just like they did in Westinghouse. If I came forward with a motion to quash that subpoena or some sort of confidentiality protection petition, the court would have to engage in that analysis. That didn't happen in this case. In this case, state actors took the information without her permission and without that protection and maliciously used it to disclose her personal information. Now, Ms. Lopez, it seems to me that your answer to Judge Callen's question in part refutes your very argument, in that the information in this case that Dr. Malloy is complaining about is information that she voluntarily disclosed. It's not information that she was forced to give under oath in a deposition. She voluntarily disclosed it. When you voluntarily disclose information, you don't automatically, it's not automatically stripped of its private nature or its personal protection. But the second problem I have, I think, which distinguishes your case, is that the report which was disclosed was a public, was a report prepared for a school district in Pennsylvania, a public entity. Wouldn't that report have been subject to the Right to Know Act? Your Honor, actually, it was not subject to the Right to Know Act. Pursuant to the Right to Know Act, it would have been excluded as a non-criminal investigative report. And the opinion letter would have been subject to disclosure, I believe, but not the KCAG report with all those records of the children making statements or the summary of the attorney Callen made regarding the investigation he concluded. If I have no further questions, I reserve rebuttal. Did you have something to add? We'll have you back on rebuttal. Thank you very much. Mr. Cianci, you're going to take ten minutes, and Mr. Braun, five, is that correct? Yes. Okay. Thank you, Your Honor. May it please the Court, my name is Paul Cianci, and I represent Appalese John George and Jill Hackman, two of the defendants below. I believe that Judge Jordan's example about the derogatory statement made in private nicely illustrates the flaw in Dr. Malleus's argument. Well, why don't you respond to what I take Ms. Lopez's argument to be, which is this really wasn't a voluntary disclosure. This was something required under Pennsylvania child abuse reporting statutes. She, as a responsible citizen, was under a duty to communicate this information, and she did so on a specific understanding that it was to be dealt with in strictest confidence so that this wasn't just me shooting the breeze about a colleague. This was something in the context of statutory obligations and an official investigation, and that that context makes a difference. That's what I understand her to be driving at. Why don't you address that context-based argument? Sure. There are a few points of response. First, she alleges that it was in the context of a child abuse investigation. Under the statute that she cites, it doesn't qualify as a child abuse investigation. She has certainly not in her brief set out why she believes that that is the case. Would that matter? Would it matter if it did? It would not matter if it did, because this court has held as recently as 2009 in the Nunez case, which is at 578 F. 3rd 228, that a state statute cannot create a constitutional privacy right. So even if the child abuse statute applied, and even if that statute says the report has to be confidential, that statute cannot create, under this court's precedent, a constitutional privacy right. How about the fact that she gave this information confidentially? In other words, she saw him confidentially telling you this. Is that worth anything? No. It's worth nothing. That mere statement does not create a constitutional privacy right. The information is what matters. Wait, wait. Someone says that to me. I've been in an investigation, so they want to give me confidential. I tell them it's not confidential. No one here told her that the information you're giving me, I do not accept your position that you're going to give me confidential information. So she has something there. Does a contract writer, what does she have? The information was related, according to her, confidentially, and the confidential nature of it was not disputed by the person receiving the information. She might have something. I'm not sure what she might have, but she doesn't have a constitutional claim. Well, what does she have? If she doesn't have a constitutional claim, what does she have? She may have nothing. But she could have a state tort action, but not a constitutional claim. She needs to have a private statement that is intimately personal, and her statement was neither private nor personal. It was a statement about someone else. So you're acknowledging here that she, you're acknowledging for your clients in open court that she has a state tort action for what? A breach of contract of confidence. I don't know what claim she has, Your Honor. All I know is that she doesn't have a constitutional claim. Well, let me ask if you, when you assert this is neither private nor personal, what does it take to reach the level of private and personal? Do you think that only one's own medical information meets this standard? I mean, did Judge Sanchez draw the lines too tightly? I don't think that Judge Sanchez has drawn the line too tightly, no. This court and other federal courts have been extremely reluctant to expand these types of privacy rights, and this court will only shield information that is deeply rooted in notions of fundamental personal interests derived from the Constitution. Is there a policy problem here? What happens, you know, if we say what you'd like us to say, which was what Judge Ann uphold Judge Sanchez's ruling, does that discourage people from giving the kinds of reports, candid assessments, official investigations, particularly into matters like sex abuse, child molestation, need? I don't think so, Your Honor, because we're dealing with a circumstance where the speaker has to expect, has to reasonably expect, that the information he or she gives may be made public. We're talking about a matter that is very, very sensitive and that the public has a very high interest to know about. So doesn't that actually, I mean, if you believe that it's highly likely that it's going to come out, then what's the incentive to share the information? The incentive to share the information is to protect the children. Yeah. Because you want to get to the right answer, in theory. So you don't see any, you don't see a natural difficulty or conflict within the position you're propounding, which is you have to know all this is going to come out, and therefore, no matter how personal and confidential it is, you'll give it. Well, I think that the context of this case is what makes it unique. We're talking about a conversation in the context of an investigation where an adult teacher who had been allegedly seen kissing a student was caught two years later in a more significant circumstance. I wish that were unique, Mr. Cianci, but sadly, there are child abuse cases that come out of schools with more regularity than we'd like. So this isn't unique. And I guess what I'm trying to ask you is, what's the real-world ramification of saying, yeah, you give what you think is confidential information to a school board investigation, and you can just expect it's going to be on the front page, literally?  I think the real-world ramification is that the person in that circumstance has to expect that that information might end up on the front page. Well, what person would give the information, in this case in particular? She gave it under what she thought was a – what she expressly said was a confidential agreement. Do you think that information – just to tag on to what was just said – do you think that information would have been forthcoming if she thought it was going to go public? I don't know, Your Honor. Well, you must know. She said, I won't give it to you except confidentially, and therefore it wouldn't have been forthcoming if she didn't think it was going to be confidential. But she made that statement to a lot of other people before she made the statement to the investigator. Well, that's another question, whether she waived the confidentiality by saying it to others. But let's put that aside for a moment. That's a separate – if she has a confidential right here, it can be waived. But we're dealing with whether she has one in the first place. And your position is that this information should be coming forward, but you just told Judge Jordan that, in effect, if people thought it was going to be on the front page of the local paper, they would give the information. But constitutionally, I don't think that that conclusion makes any difference. Well, why should she have a constitutional right if then the information is not going to be forthcoming confidentially or otherwise? Maybe the person will make that choice. But the speaker will only have a constitutional protection when she talks about intimate personal matters. Does the right to privacy, assuming there is one, does it protect only facts or does it also protect opinions? Certainly, it has only protected facts in the current case law. It certainly does not protect opinions about other people. Is that what we have here? Yes. She's not talking about herself in any way, shape, or form. She's talking about someone else, not her spouse, like the Slater case. She's talking about her grandniece. And that's all that this statement is, or these statements. Does case law appear to say that that matters? No. It doesn't matter to help. It doesn't help. Well, case law does. A doctor's opinions as to disease causation and so forth is protected. Under the federal constitution? Yes. Right. Yes. Okay. We'll have you. Thank you very much. Thank you very much. Thank you. Mr. Brown. Good morning, Your Honor. May it please the court, counsel. My name is Len Brown, and I represent the appellee Jeffrey Conrad. The poll star for the court in deciding this case has been clearly laid out by the United States Supreme Court in Paul v. Davis. Justice Rehnquist, writing for the court, said the personal rights found in this guarantee of personal privacy must be limited to those which are fundamental or implicit in the concept of ordered liberty. Do you accept, Mr. Brown, that your client, though a private citizen, was acting with government actors and, therefore, for purposes of this case, should be viewed as a state actor? I don't, Your Honor. I think there's a significant can of worms that gets opened as we get into the analysis of state action here, different from the cases that were cited, I believe, by both sides. Mr. Conrad clearly, and it's part of the record as Exhibit C to the complaint, explains the reason for his inquiry to the Warwick School Board. He's writing as chairman of the Lititz Republican Committee, and he asked for a redacted report. The allegation is that Mr. Conrad and Ms. Hackman are friends and that this was a product of collusion. The passing of this report in the opinion letter was a product of collusion because Ms. Hackman and Dr. Hackman and Dr. George couldn't perhaps release it themselves for fear of repercussions, but they were perfectly willing to use your client to do it in an attempt to embarrass and humiliate Dr. Malleus. If that allegation were accepted as true, would it be legally sufficient to make Mr. Conrad a state actor? Your Honor, I still think it's a close call with accepting as true the fact that you have just stated because the mere acquiescence, the Supreme Court has stated that the mere acquiescence of state actors in the conduct of someone else does not allow that person to rise to the level of state action. Of course, here the allegation is not acquiescence. It's active collusion, right, working with. I give you this report so that you can give it to the press. That is the allegation of the complaint, Your Honor. It was your client who gave, who it's alleged gave it to the press. That's the allegation, Your Honor. So it's more than he was just working with the other. He was more than he was just working with the board members. He was the one who actually released the report that some of the other board members allegedly were happy to see because they were, this was really not a battle between them and Dr. Malleus. It was a battle between them and Mr. Hostetter, was it not? Well, Your Honor, there's certainly a political aspect to this, and it's very evident, I believe, in the attachment to the complaint. The attachment that's been, or the email that's been attached to the complaint as to the reasons why the report was being requested. And if the court were to assume for the sake of argument that a privacy interest exists, I believe that gives the court enough to do a balancing test as to the importance and shows the importance in this community of holding people accountable who are in positions of trust as public school directors and how they're performing their jobs. That is the reason the newspapers were interested. And I think it's important to point out to the court, too, something very significant with respect to whether Dr. Malleus believed this was protected at all for privacy reasons. If you look at the record on pages 214 and 215, when Dr. Malleus is asked by a reporter from the Lititz record, you would expect, as her counsels just argued, that she would say that stuff is confidential. I'm not going to talk about it. Her reasons, which apparently will be alleged if this is sent back, her reasons that she gave to the reporter for the Lititz record belie any privacy interest at all. She gave three reasons. The first reason was that the report was prepared by an attorney who worked with an attorney for the school board, so therefore it's questionable. The second reason she gave was that she didn't have a chance to review the report for errors before it was released. And the third reason she gave was that the superintendent is the one responsible for reporting child abuse. Never mentions any concerns about privacy. And I think that alone is enough in the record to uphold the decision of the district court because there is no reasonable expectation of privacy that's been shown or pled in this case. This court should reject the offer that's been given to expand the substantive due process rights and expand the definition of privacy and affirm the district court's opinion. Thank you very much. Thank you, Mr. Brown. Ms. Lopez. Your Honors, the agreement that was reached between Attorney Conrad in that email, attachment B to the complaint, was that he... First of all, let me just say this. He requested a copy of the report, even requesting that it be redacted, despite the fact that that report was not available to the public. No one knew about that report. How did he know about that report? The allegations in the complaint, as Judge Jordan has pointed out, indicate that there was some action in concert. And Dr. Malleus at that point knew that there was somebody on the inside that was working to get this report. Let's assume that that's all wrong, wrongful behavior. Is every wrong a constitutional wrong? Of course not, Your Honor. Okay. So even if we were to assume that the defendants here were bad actors in some way, hit, if you would, the central issue here. Why is Mr. Cianci incorrect when he says to us they might have some state court action, but there's nothing in the Constitution that protects a comment about one's relative? The characteristics, opinions, and thoughts and impressions that are relayed from a personal perspective to another entity, especially a state actor, are protected. That's as personal as you get. Well, do you acknowledge that that would be a significant expansion on the current case law? I would acknowledge that the case law has not addressed this issue, but I would purport that the reason why it has not been addressed is because it's so obvious. If the fact that you take Advil to cure your allergies is protected by Whalen as a 14th Amendment privacy issue is something that is out there as a matter of law, then certainly the reason why you take it, your concerns about why you take it, the impressions and communications you have with your personal partners or your family members has to be protected. And that's what Sheets found. We don't have those facts in this circuit and in any particular case, but Sheets made it clear. It's about a reasonable expectation of privacy. It's about what you say about other people in your personal context of your relationships that matters. And, Judge Fisher, I want to address your concern about the public record. Let's just take a minute to look at this circuit's opinion in FOP. In FOP, we had a very strong public interest in making sure there wasn't corruption in the Philadelphia Police Department, and the questionnaires were being sent out to the police force so they could screen who was appropriate for the police department. They didn't ask for fact information. They asked for behavioral information, attitudinal information, context information, and the police force resisted disclosing that information. That's why we have FOP. So it's very clear that context does matter and that it's the reasonable expectation of privacy that really holds the day. The court in FOP said, if you are drinking in a public bar, it's not protected. But if you're in your basement having a beer, that very well may be protected. That was the nature of the analysis in this circuit's opinion in FOP. I'm not asking this court to extend the rule. I'm asking this court to apply the rule that it is a reasonable expectation of privacy that makes the determination as to whether their information is protected under the 14th Amendment. Thank you. We thank both counsel for excellent argument on a very interesting case, and we will take the matter under advisory. Thank you.